# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **DORLAN WAYNE WILLARD,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 2:02-CV-2354-RDP |
| **FAIRFIELD SOUTHERN COMPANY, INC., et al.,** | } |
| **Defendants.** | } |

## MEMORANDUM OPINION

The court has before it Defendants Birmingham Southern Railroad Company and Fairfield Southern Company's Motion for Summary Judgment (Doc. # 36) and Plaintiff Dorlan Wayne Willard's Motion for Partial Summary Judgment (Doc. # 41). The motions have been fully briefed and were under submission as of April 19, 2005 (Doc. # 34).

Plaintiff has brought suit in this case under the Federal Employer's Liability Act, 45 U.S.C. § 51, *et. seq.*, ("FELA") for injuries that Plaintiff allegedly incurred at work due to the negligence of his employer, Defendant Fairfield Southern Company, Inc. ("FSC"). Plaintiff has also brought suit against Defendant Birmingham Southern Railroad Company ("BSRR"), a common carrier by railroad engaged in interstate commerce and the parent company of FSC, a wholly owned subsidiary.

Plaintiff's summary judgment motion alleges that FSC is subject to FELA because it, like BSRR, is a common carrier by rail engaged in interstate commerce. (Doc. # 41). Plaintiff further maintains that BSRR – although not the employer of Plaintiff – is properly named in this action because FSC is "its alter ego and a mere instrumentality." (Docs. # 1, 41). Defendants maintain that summary judgment is appropriate in their favor because FSC is an in-plant railroad not subject to

FELA; FSC is not the alter ego of BSRR; and in any event, Plaintiff is judicially estopped from pursuing any claims under FELA because he already has accepted full medical benefits under the Alabama Worker's Compensation Act plus indemnity payments for his alleged injuries. (Doc. # 36).

For the reasons outlined below, the court finds that Defendants' motion for summary judgment is due to be granted because there are no disputed issues of material fact and Defendants have demonstrated that they are entitled to judgment as a matter of law. Plaintiff's motion for partial summary judgment is due to be denied.

I.    **Legal Standards for Evaluating a Summary Judgment Motion**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met his burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

## II.     Relevant Undisputed Facts[1]

### A.     Relationship Between FSC and BSRR

Prior to 1983, U. S. Steel Fairfield Works ("Fairfield Works") operated its own rail system, complete with locomotives and railcars plus equipment and maintenance support facilities, on its own tracks. (Gentile Affidavit). In 1983, steel production was discontinued at Fairfield Works, and United States Steel Corporation ("U.S. Steel") and the United Steel Workers of America entered into a contract allowing Fairfield Works to transfer its rail operations to FSC, a newly formed corporation. (Gentile Affidavit). FSC was incorporated as a subsidiary of BSRR to avoid redundant costs for locomotives, freight cars, track maintenance, and transportation operating facilities. (Gentile Affidavit). FSC maintains the formal legal requirements of a separate corporation. (Gentile Affidavit).

BSRR is a common carrier by rail that holds itself out to the public for hire. (Gevaudan Depo., at 65). The board of directors of BSRR and FSC are the same, as is the Trainmaster for both companies. (Kashurba Depo., at 22, 26-27). BSRR is the only shareholder in FSC. (Gevaudan Depo., at 17-18, 20). BSRR and FSC have the same office address and emergency phone number. (Jones Depo., at 40-41). FSC pays BSRR a management fee for supervision of FSC employees. (Willard Affidavit, Ex. 10; Jones Depo., Ex. 4). FSC's trainmen (those employees who move and

---

[1] If facts are in dispute, they are stated in the manner most favorable to the Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

unload the cars) and the FSC acting tower supervisors are the only FSC employees who work solely for FSC. (Jones Depo., at 49-51). All other FSC supervisors are also BSRR employees. (Jones Depo., at 38). FSC and BSRR maintain separate rule books and separate safety programs. (Pearce Affidavit).

  B. **The Business of FSC**

FSC provides rail service to U.S. Steel, to two vendors of Fairfield Works whose facilities are located on Fairfield Works property (Fritz Enterprises and Tube City), and to U. S. Steel Mining Company, LLC, a wholly owned subsidiary of U.S. Steel. (Gentile Affidavit). The contract between FSC and U. S. Steel states the purpose of their relationship as follows: " WHEREAS, USS desires to arrange for the performance of rail transportation services relating to the movement of commodities on or over industry-owned tracks within and contiguous to the USS Fairfield Works." (Gentile Affidavit, contract attachments). FSC has separate and distinct stand-alone contracts with Fairfield Works, U. S. Steel Mining Company, LLC, and the two vendors for Fairfield Works. (Gentile Affidavit). No common carrier railroad, including BSRR, is a party to those contracts. (Gentile Affidavit). FSC directly invoices its customers, and they, in turn, directly pay FSC for its services. (Gentile Affidavit). FSC maintains a separate account which is used for funding its payroll and payments to vendors. (Kashurba Depo., at 13, 15). BSRR does not fund the account of FSC. (Kashurba Depo., at 16).

FSC receives no rate division *from* any common carrier railroad, including BSRR, and collects no rate divisions *for* any common carrier railroad including BSRR. (Gentile Affidavit).[2]

---

[2] BSRR bills its customers, including U. S. Steel, separately and does not share any of its common carrier revenues with FSC. (Pearce Affidavit).

FSC does not publish rate tariffs and is not regulated by the Surface Transportation Board as a common carrier by railroad. (Gentile Affidavit).

FSC does not own or lease any tracks, nor does it own railroad cars/locomotives or perform maintenance work on any railroad rolling stock, locomotives or track. (Gentile Affidavit). FSC maintains no wharves, docks, interchange tracks or other public facilities for the receipt or handling of freight. (Gentile Affidavit). All motive power (engines and locomotives) that FSC uses is owned and maintained by BSRR. (Gevaudan Depo., at 41-43).

Moreover, FSC does not link two common carriers. (Pearce Affidavit). FSC operates only on tracks owned by customers they serve. (Willard Affidavit, Ex. 9; Gevaudan Depo., at Ex. 2). FSC does not operate over the tracks of any common carrier railroad including the BSRR. (Gentile Affidavit). However, FSC does haul coal on U.S. Steel-owned tracks from a coal washing facility at Concord to BSRR's Norrell Junction location. (Willard Affidavit, Ex. G).

Plaintiff maintains that FSC sometimes performs work for BSRR by switching BSRR cars at tracks located in the tin mill area of Fairfield Works. (Willard Affidavit, at 2).[3] It is undisputed, however, that FSC and BSRR's bargaining agreements, by their very nature, prevent the overlapping of work between these two separate entities. (Pearce Affidavit). According to the agreements, if either company attempted to perform the work of the other company, a grievance could be filed. (Pearce Affidavit). According to the Director of Marketing for BSRR, experience has shown that these two unions jealously protect their "turf" and do not allow employees of one bargaining unit to usurp the work performed by a different bargaining unit. (Pearce Affidavit).

---

[3] Defendants dispute this allegation.

### C. Comparable Governmental Control of FSC and BSRR

Employees of FSC pay employment taxes under the Social Security Act, not the Railroad Retirement Act. (Gentile Affidavit). Employees of FSC also are eligible to receive Alabama state unemployment benefits rather than benefits under the Railroad Unemployment Insurance Act, 45 U.S.C. § 351, et. seq. (Gentile Affidavit). The Deputy General Counsel of the Railroad Retirement Board has opined that FSC is not a carrier by railroad subject to the Interstate Commerce Commission (now the Surface Transportation Board) nor is FSC an employer under the Railroad Retirement and Railroad Unemployment Insurance Acts. (Gentile Affidavit, Opinion No. L-85-120).

FSC employees are represented by the United Steel Workers of America and their employment relationship with FSC is governed by the National Labor Relations Act. (Gentile Affidavit). By contrast, BSRR train operating personnel are represented by the United Transportation Union and the Brotherhood of Locomotive Engineers and their employment relationship with BSRR, including all aspects of collective bargaining, is governed by the Railway Labor Act. (Gentile Affidavit). FSC's train operations are regulated by the Occupational Safety and Health Commission, while BSRR's train operations are regulated by the Federal Railroad Administration ("FRA"). (Gentile Affidavit).

### III. Applicable Substantive Law and Discussion

For the reasons outlined below, the court finds that summary judgment is due to be granted in favor of FSC because FSC is not a common carrier by rail in interstate commerce and thus not subject to FELA. The court also finds that summary judgment for BSRR is appropriate because

BSRR is not Plaintiff's employer, and FSC is not the alter ego of BSRR.[4]

### A. FSC Is Not Subject to FELA and Therefore, Summary Judgment in Favor of FSC Is Due to Be Granted.

Under FELA, a plaintiff may bring suit against his employer if that employer is a "common carrier by railroad" while engaging in commerce between any of the several states or territories. 45 U.S.C. § 51. Section 51 provides:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or ... any foreign nation or nations shall be liable in damages to any person suffering injury while he was employed by such carrier in such commerce, ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment ....

The term "common carrier by railroad" has been defined to mean "one who operates a railroad as a means of carrying for the public,--that is to say, a railroad company acting as a common carrier." *Edwards v. Pacific Fruit Express Co.*, 390 U.S. 538, 540 (1968). More recently, courts have noted

---

[4] Defendants also maintain that Plaintiff should be judicially estopped from pursuing his claims under FELA because of his receipt of benefits under the Workers' Compensation Act of Alabama and indemnity payments. Given the court's rejection of Plaintiff's "common carrier" and "alter ego" theories, the court need not reach Defendants' estoppel argument and, in any event, the court believes that the relevant case law may not favor the application of judicial estoppel in this case. However, the court notes that while the circumstances surrounding Plaintiff's acceptance of worker's compensation benefits and indemnity payments may not meet the *specific* requirements for estoppel, they are nevertheless suspect. *Prior to Plaintiff's alleged injury*, Plaintiff contacted the FRA in an effort to convince the FRA to exert jurisdiction over FSC, and he met with a representative from the FRA on site to investigate whether FSC would be governed by the FRA. (Willard Depo., at 63-65). Plaintiff also attended a group meeting with an attorney, where it was discussed that claims under FELA were "a whole lot greater" than under the Alabama Workers' Compensation Act. (Willard Depo., at 31-32). Nevertheless, following Plaintiff's alleged injury in August 2001, Plaintiff applied for and received benefits under the Alabama Workers Compensation Act at the rate of $444.00 per week. (Willard Depo., at 29). As of the date of filing summary judgment, Plaintiff had received at least $38,000 in indemnity benefit payments and $53,199 in payment of medical bills under the Act. (Doc. # 39, Ex. 2). Despite having recovered those significant amounts, Plaintiff filed this lawsuit under FELA over a year after his alleged injury.

that a common carrier meets the following criteria:

> One who holds himself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering his services to the public generally. The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently, and hence is regarded in some respects as a public servant.

*Kieronski v. Wyandotte Terminal Railroad Co.*, 806 F.2d 107, 108 (6th Cir. 1986) (citations omitted). It is the plaintiff's burden to show that the defendant is a common carrier, and plaintiff "therefore must present affirmative evidence indicating such." *Mickler v. Ninishillen and Tuscarawas R.R. Co.*, 13 F.3d 184, 189 n. 3 (6th Cir. 1993).

In this case, FSC maintains that it is not a common carrier because it does not hold itself out to the public as providing rail service for hire. (Gentile Affidavit). Rather, FSC maintains that it is an in-plant railroad which transports products within the confines of Fairfield Works. (Gentile Affidavit). Industries operating in-plant rail facilities for their own benefit and not offering transportation to the public for a fee are not considered common carriers. *Iverson v. Southern Minnesota Beet Sugar Co-Op*, 62 F.3d 259, 263 (8th Cir. 1995). As the former Fifth Circuit noted in *Lone Star Steel Co. v. McGee*, 380 F.2d 640 (5th Cir. 1967), "Courts have long recognized the distinction between plant facilities and true agencies of transportation. . . . [Courts have held that] where an industry maintains a complicated intra-plant railroad system, such rail operations will be regarded as plant facilities rather than those of a common carrier. The movement of freight within the plant is not common carriage but rather industrial plant usage." *Lone Star*, 380 F.2d at 644 (internal citations omitted). Thus, it is for this court to determine whether FSC is a common carrier railroad, subject to FELA, or merely an in-plant or "private carrier" railroad.

Plaintiff contends that *Lone Star*, which is binding precedent on this court under *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), necessitates a finding that FSC is a common carrier. The court disagrees. In *Lone Star*, the defendant steel company (Lone Star) operated an in-plant rail system. *Lone Star*, 380 F.2d at 642-43. As in this case, other industries also had operations on Lone Star's plant grounds. *Id.* A main line of the Texas & Northern Railway Company ("T & N"), a common carrier railroad, extended the length of Lone Star's facility in conjunction with the in-plant system. *Id.* Lone Star owned over ninety percent of the stock of T & N and received dividends on the profits. *Id.* Lone Star also owned and operated locomotives at the plant, both for its own in-plant rail movements and in furtherance of T & N's operations for the other industries at the plant. *Id.*

The court in *Lone Star* enumerated four factors to be considered in the "common carrier" analysis: (1) the entity is actually performing rail service; (2) the service being performed is part of the total rail service contracted for by a member of the public; (3) the entity is performing as part of a system of interstate rail transportation by virtue of common ownership between itself and a railroad or by a contractual relationship with a railroad and hence such entity is deemed to be holding itself out to the public; and (4) remuneration for the services performed is received in some manner, such as a fixed charge from a railroad or by a percent of the profits from a railroad. *Lone Star*, 380 F.2d at 647. Applying those factors, the Fifth Circuit found that Lone Star was a "common carrier" railroad for the purposes of FELA liability because the company owned and operated railroad equipment, it did not restrict use of its in-plant rail system to the operation of its steel mill, it regularly transported for others to fulfill the obligations of T & N, a common carrier railroad which it controlled, and it received as dividends a part of the rate charged by T & N. *Lone Star*, 380 F.2d

at 647.

This court finds *Lone Star* to be distinguishable from the case at hand. Although FSC does perform rail service for other industries at the Fairfield Works location, it does so through *direct* contracts with those industries, not in fulfillment of BSRR's obligations to those companies. The court finds this to be the principal difference between the cases – Lone Star performed rail services for on-site companies in fulfillment of the common carrier railroad's obligations to those industries, while FSC does not. In applying the *Lone Star* factors, the Sixth Circuit noted,

> Lone Star looks initially like a typical in-plant operation, which would not be characterized as a "common carrier," except that Lone Star's operation did not end there. Lone Star also performed some of the functions of the common carrier, functions that the common carrier's customer had contracted to have the common carrier perform. Lone Star became, in effect, part of the common carrier by virtue of Lone Star's ownership of the common carrier, combined with Lone Star's performance of the common carrier's duties.

*Kineronski v. Wyandotte Terminal Railroad Co.,* 806 F.2d 107, 109 (6th Cir. 1986). Such is not the case here.

A specific analysis of the four *Lone Star* factors illuminates the differences between this case and *Lone Star*. Although there is no dispute that FSC performs rail service, the first *Lone Star* factor, the other three factors are not satisfied in this case. The second and third factors of the *Lone Star* analysis focus on the part that FSC plays in the grand scheme of BSRR's rail service. In this case, FSC does not perform common carrier services for BSRR. (Gentile Affidavit). By contrast, as noted above, the plant railroad in *Lone Star* regularly transported for other companies located on Lone Star's property, and the charge for that rail service was included in the line haul freight rate charged by T & N, whose tracks were connected to the plant rail yard. The facts in *Lone Star* supported the conclusion that the plant railroad was, by definition, a "common carrier" because it performed

10

services for a common carrier that were a necessary part of the common carrier's total rail operation. 380 F.2d at 646.

By contrast, the evidence in this case shows that FSC meets the classic definition of a *private* carrier. A private carrier has been defined as a carrier that hauls for clients "pursuant to individual contracts, entered into separately with each customer." *Kieronski v. Wyandotte Terminal R. Co.,* 806 F.2d 107, 109 (6th Cir. 1986); s*ee Loveless v. Railway Switching Services, Inc.*, 665 N.E.2d 252, 254-55 (Ohio App. 1995)(applying the *Lone Star* factors and finding that the in-plant system acted as a private carrier because it performed its services based on individual contracts entered into separately with each customer, rather than for the public at large). Although FSC does perform rail service for Fairfield Works' in-plant scrap recyclers, Tube City[5] and Fritz Enterprises ("Fritz"),[6] FSC – not BSRR – maintains the contracts with those facilities. (Gentile Affidavit). Tube City and Fritz are located entirely on U. S. Steel property (Wilson Depo., at 17-18, 35; Sitz Depo., at 34, 38-39), and FSC's rail service for those companies is performed only within the boundaries of Fairfield Works. (Wilson Depo., at 38, Ex. B). Those companies pay FSC directly (Kashurba Depo., at 13, 15-16); they are not charged a fee by BSRR which includes a portion for that service. All of these facts suggest that FSC is more properly classified as a private carrier performing service via direct

---

[5] Tube City's primary service at the mill is to take in scrap material, process it, bundle it and return it to the plant for steel making. (Wilson Depo., at 36, Ex. B).

[6] Fritz contracts with U. S. Steel to service the blast furnaces. Fritz typically takes scrap material from the blast furnace activity, processes it on site, and returns it back to the blast furnace as re-processed material for U. S. Steel to use. (Sitz Depo., at 35, Ex. D). In addition to the blast furnace activities, Fritz is involved in processing various materials for U. S. Steel for use in the "bop shops." (Sitz Depo., at 36, Ex. D).

contracts with customers.[7]

The fourth *Lone Star* factor – remuneration for the services performed – is likewise not satisfied in this case. Unlike *Lone Star*, it is undisputed that FSC receives no rate divisions from any common carrier railroad and collects no rate divisions from any common carrier railroad. (Gentile Affidavit). *See Iverson v. Southern Minnesota Beet Sugar Co-Op*, 62 F.3d 259, 264 (8th Cir. 1995)(applying the *Lone Star* factors and affirming summary judgment in FELA case because the in-plant rail operation of the employer was not offering transportation to the public for a fee and thus was not considered a common carrier). Thus, application of the *Lone Star* factors in this case does not support Plaintiff's conclusion that FSC is a common carrier.

Moreover, Defendants point out that no federal authority has contended that FSC is, or considers FSC to be, a common carrier railroad subject to federal common carrier regulations. Although not dispositive of the issue, the court finds this evidence persuasive. On November 7, 1985, the Deputy General Counsel for the Railroad Retirement Board issued a written opinion concluding that FSC "is not an employer under the Railroad Retirement and Railroad Unemployment

---

[7] The court rejects Plaintiff's argument that FSC is a common carrier because it is a "necessary link" or "linking carrier" between BSRR and Fritz Enterprises or Tube City. First, the undisputed evidence does not support Plaintiff's contention that Tube City and Fritz are BSRR's customers; rather, FSC maintains separate contracts with those entities. Moreover, as the Sixth Circuit has noted, a linking carrier is a railroad that links common carriers to one another, not one that links a private business to a common carrier. *Kieronski*, 806 F.2d at 109 (noting that "an in-plant system does not become a common carrier merely by being connected to a common carrier, because such a connection is a common feature of in-plant systems"). It is undisputed that FSC does not link two common carriers. (Pearce Affidavit, Ex. 5). Likewise, Plaintiff's implication that FSC performs services for outside parties when it transports materials from one of its clients to or from holding yards for later pick-up by common carrier rail is not persuasive. Other courts analyzing the *Lone Star* factors have rejected this argument. *See, e.g., Loveless*, 665 N.E.2d at 255 ("The mere fact that an in-plant system is connected to tracks owned or operated by a common carrier is not enough to bring the in-plant system within the scope of the FELA provisions, because virtually all in-plant operations share this characteristic."); *see also Kieronski*, 806 F.2d at 109.

Insurance Acts." (Gentile Affidavit, Opinion No. L-85-120 (1985)).[8] Interestingly, although Plaintiff personally has contacted the FRA in an effort to convince it to exert jurisdiction over FSC, the FRA never has. (Willard Depo., at 63-65).[9]

Considering all of the undisputed evidence in this case, the court is of the opinion that FSC is not a "common carrier" by railroad and thus not subject to FELA. Accordingly, summary judgment is due to be granted as to FSC because Plaintiff has asserted only FELA claims against FSC in this action.

>   B.  **FSC Is Not the Alter Ego of BSRR, and Therefore, Summary Judgment in Favor of BSRR Is Due to Be Granted.**

FELA provides that a covered railroad is liable for negligently causing the injury or death of any person "while he is employed" by the railroad. 45 U.S.C. § 51 (1980). In this case it is

---

[8] The Deputy General Counsel's analysis provides:

> The Interstate Commerce Commission has jurisdiction over common carriers engaged in the interstate transportation of passengers or property by railroad, pursuant to §10501 of Title 49 of the United States Code. A common carrier may be defined in general as one which holds itself out to the public as engaging in the business of transporting people or property from place to place for compensation. It is the right of the public to demand service that is the real criterion which is determinative of its character as a common carrier. In contrast, a private carrier is one which, without making it a vocation or holding itself out to the public as ready to act for all who desire the service, undertakes by special agreement in a particular instance only, to transport property or persons from place to place. Private carriers thus undertake not to carry for all persons indiscriminately, but rather transport only for those with whom they see fit to individually contract. See the Tap Line Cases, 234 U.S.1 (1913). (Emphasis added).

(Gentile Affidavit, Opinion No. L-85-120 (1985)).

[9] Plaintiff admitted that before his alleged back injury, he requested a meeting with an FRA representative on site to investigate the issue of whether FSC would be governed by the FRA. (Willard Depo., at 64 - 65). Following that investigation, the FRA official told Plaintiff that the FRA does not consider FSC to be an FRA railroad. (Willard Depo., at 64 - 65).

undisputed that Plaintiff was employed by FSC, not BSRR.[10] Nonetheless, Plaintiff argues that BSRR is a proper defendant to his FELA claims because FSC is BSRR's "alter ego." (Doc. # 1).[11]

Under Alabama law, BSRR cannot be found to be the employer of Plaintiff under an alter ego theory "unless [BSRR] so controls the operation of [FSC] as to make it a mere adjunct, instrumentality, or alter ego of [BSRR]." *Duff v. Southern Ry. Co.*, 496 So.2d 760, 762 (Ala. 1986). Whether FSC is a mere instrumentality of BSRR is a question to be determined from all the

---

[10] Although Plaintiff's opposition to Defendant's motion for summary judgment now appears to allege that he was, in fact, "employed" by BSRR (Doc. # 50, at 25), the undisputed facts indicate otherwise. Plaintiff unequivocally testified that he worked solely for FSC, not BSRR.

> Q: Where are you employed Mr. Willard?
> A: Fairfield Southern Company.
> Q: How long have you worked there?
> A: Eight years.

(Willard Depo., at 5)

> Q: You have never worked for Birmingham Southern Railroad Company have you?
> A: No.

(Willard Depo., at 32).

[11] Although Plaintiff also calls upon the "borrowed servant" doctrine and a doctrine he terms the "single business enterprise theory," those arguments merit little discussion. Under the "borrowed servant" doctrine of *Kelly v. Southern Pacific Co.*, 419 U. S. 318 (1974) and its progeny, Plaintiff must present evidence that he was working for BSRR at the time of his injury, acting for "two masters simultaneously," or essentially was the subservant of a company that was a servant of BSRR. *Kelly*, 419 U. S. at 323-24. There is no such evidence in this case. Nor has Plaintiff presented evidence to show that Plaintiff's work activities could be considered to be in furtherance of the "common carrier" duties of BSRR. Although Plaintiff explains that the "single business enterprise doctrine," is "when corporations are not operated as separate entities, but rather integrate their resources to achieve a common business purpose" (Doc. # 50, at 22), this appears to be nothing more than another name for the alter ego doctrine, addressed herein.

surrounding circumstances.[12]  Items to be considered in reaching such a determination include:

(1) The parent corporation owns all or most of the capital stock of the subsidiary;
(2) The parent and subsidiary corporations have common directors or officers;
(3) The parent corporation finances the subsidiary;
(4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;
(5) The subsidiary has grossly inadequate capital;
(6) The parent corporation pays the salaries and other expenses or losses of the subsidiary;
(7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;
(8) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;
(9) The parent corporation uses the property of the subsidiary as its own;
(10) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest; and
(11) The formal legal requirements of the subsidiary are not observed.

*Duff,* 496 So.2d at 763 (relying on the factors enumerated in §§ 5 and 6 of Powell on Parent and Subsidiary Corporations).  No one of these factors is dispositive; nor does the list exhaust the

---

[12] Plaintiff maintains that summary judgment is not appropriate because the question of whether FSC is the alter ego of BSRR is a question of fact for the jury, as the Alabama Supreme Court found in *Duff*. That is simply not the case here because the summary judgment standard articulated in *Duff* is not applicable in federal cases. In *Duff*, the Alabama Supreme Court applied the alter ego factors articulated in the court's discussion above, found several of them to be satisfied by the facts in that case, and reversed the lower court's grant of summary judgment because it found at least a "scintilla of evidence" in support of the alter ego theory advanced by the non-moving party. *Duff,* 496 So.2d at 763. The scintilla standard does not govern the summary judgment analysis in federal court. "In determining the merits of [a summary judgment motion], [this court is] guided by a different standard than the scintilla rule followed by the Supreme Court of Alabama. In federal court . . . [s]ummary judgment is not proper if there is substantial evidence to support the opposing party's allegations. The federal substantial evidence rule barring summary judgment entails a far greater showing than the mere suspicion or scintilla of evidence criterion employed by the Alabama courts." *Marcus v. St. Paul Fire and Marine Ins. Co.*, 651 F.2d 379 (5th Cir. July 1981). Accordingly, the proper inquiry in this case is whether Plaintiff has presented *substantial* evidence to support his alter ego argument. The court finds that he has not.

relevant factors. Moreover, under Alabama law, the alter ego analysis also requires a showing of misuse of control and harm or loss resulting from that misuse. *See Econ Marketing, Inc. v. Leisure American Resorts, Inc.*, 664 So.2d 869, 871 (Ala. 1994).

Plaintiff relies upon the following circumstances in support of his alter ego theory: (1) BSRR is the sole shareholder of FSC; (2) the directors and upper management of BSRR and FSC are the same; (3) the offices of BSRR and FSC are the same; and (4) FSC owns no engines, cars, tracks or tools.[13] Defendant BSRR argues that these matters are not controlling and emphasizes that FSC train operating employees perform the same work today that was performed by U.S. Steel train operating employees prior to the formation of FSC in 1984. (Gentile Affidavit). BSRR maintains that the mere formation of a corporation of these employees does not magically convert that entity to the alter ego of BSRR, and Defendants highlight the distinct operating functions of BSRR and FSC.

The court finds that Defendants have produced sufficient evidence to demonstrate that FSC and BSRR are financially independent. All of the earnings of FSC come from the four in-plant customers that it serves, namely: U.S. Steel, U.S. Steel Mining Company, LLC, Fritz and Tube City. (Kashurba Depo., at 15). FSC maintains a separate account – unfunded by BSRR – which is used to pay employees and vendors. (Kashurba Depo., at 13). While BSRR earns its revenues providing rail service to the public pursuant to published tariff rates, FSC does not publish rate tariffs, nor is it regulated by the Surface Transportation Board. (Gentile Affidavit). BSRR bills its customers, including USS, separately from FSC, and it does not share any of its common carrier revenues with

---

[13] Although Plaintiff also alleges that the salaries of FSC supervisors are paid by BSRR, the undisputed evidence does not support this allegation. But even if it did, this fact would not "tip the scales" in the favor of Plaintiff's analysis.

FSC. (Pearce Affidavit). FSC and BSRR maintain separate rule books, separate safety programs, and separate payrolls. (Pearce Affidavit). The evidence demonstrates that BSRR and FSC are independent financial entities.

Further, the undisputed evidence demonstrates that governmental entities consider the companies to be separate and distinct. FSC employees are represented by the United Steel Workers of America and their contract is governed under the National Labor Relations Act. BSRR train operating personnel, on the other hand, are represented by the United Transportation Union and the Brotherhood of Locomotive Engineers, and their collective bargaining agreements are governed by the Railway Labor Act. (Gentile Affidavit). Likewise, FSC train operations are regulated by OSHA while BSRR train operations are regulated by the Federal Railroad Administration. (Gentile Affidavit). Employees of FSC are eligible to receive Alabama state unemployment benefits, rather than benefits under the Railroad Unemployment Insurance Act. Finally, employees of FSC pay employment taxes under the Social Security Act, not the Railroad Retirement Act as is the case with BSRR employees. (Gentile Affidavit). Plaintiff has not shown that any governmental entity considers FSC to be a common carrier railroad akin to BSRR.

Given the undisputed evidence in this case, Plaintiff has offered only paltry evidence of control which is insufficient to establish that FSC is the alter ego of BSRR. Although FSC and BSRR have common officers and directors, Alabama law is clear that mere identity of officers, directors, or stockholders does not make one corporation the alter ego of the other. *Forest Hill Corp. v. Latter & Blum*, 29 So.2d 298, 300 (1947) ("[B]ecause the mere fact that some or all of the stockholders or officials of two corporations are identical or because one corporation dominates the other, does not, of itself, destroy the corporate identity or merge one into the other."). That BSRR

17

owns all of FSC's stock is likewise not dispositive. Alabama law provides that even domination of a corporation by its single shareholder is insufficient to allow the piercing of the corporate veil. *Econ Marketing, Inc. v. Leisure American Resorts, Inc.* 664 So.2d 869 (Ala. 1994) (finding that additional elements of misuse of control and harm or loss resulting from it must also be present); *Ledlow Goodyear Tire & Rubber Co.*, 189 So.2d 78, 80 (1939) ("[U]nless it is shown that such separate corporate existence is a mere sham, or has been used as an instrument for concealing the truth or perpetrating fraud or where the organization and control of the subsidiary are shown to be such that it is but an instrumentality or adjunct of the dominant corporation, no liability may be imposed upon the latter for the torts of the subsidiary corporation."). Finally, Plaintiff has utterly failed to produce any evidence of misuse of control and harm or loss resulting from that misuse, a crucial factor under Alabama law. *See Econ Marketing, Inc.*, 664 So.2d at 871.

Thus, although Plaintiff can point to several factors supporting the test for determining alter ego status, the court finds that he has failed to show that FSC and BSRR do not, in reality, constitute separate and distinct corporate entities. Because Plaintiff has not produced substantial evidence to support his alter ego theory, BSRR is due summary judgment.

**IV.   Conclusion**

For the reasons stated above, Defendants' motion for summary judgment is due to be granted. The court finds that no genuine issues of material fact remain for trial and that Defendants are entitled to judgment as a matter of law. Plaintiff's motion for partial summary judgment is due to be denied. A separate order will be entered.

**DONE** and **ORDERED** this     25th     day of July, 2005.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

18