# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **DORLAN WAYNE WILLARD,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 2:02-CV-2354-RDP** |
| } | |
| **FAIRFIELD SOUTHERN** } | |
| **COMPANY, INC., et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

The court has before it Plaintiff Dorlan Wayne Willard's Motion Pursuant to Rule 60(b)(2) to Set Aside the Final Summary Judgment Granted to Defendants (Doc. # 68) filed March 22, 2006. The motion has been fully briefed, and the court held a hearing in this matter on April 12, 2006.

Plaintiff's Rule 60(b)(2) motion is based upon a February 10, 2006 letter from the FRA which explains that, despite prior indications from the FRA that it would not assert jurisdiction over FSC's operations at Fairfield Works, the FRA now has decided that FSC is subject to all FRA regulations and railroad safety statutes. (Doc. # 69, Ex. 1, at 3-4) (hereinafter the "FRA letter"). Amidst much "sound and fury," Plaintiff claims that the FRA letter is "newly discovered evidence" warranting

relief from the court's prior summary judgment order.¹   The court is not convinced that the FRA

---

¹ The court notes that many of Plaintiff's contentions in support of his motion seeking relief from judgment are not Rule 60(b)(2) "newly discovered evidence" arguments at all, but rather an invitation for the court to reconsider all aspects of its summary judgment opinion, including all of the facts relevant to the *Lone Star* analysis regardless of whether they were addressed by the FRA letter and the alter ego theory by which Plaintiff sought to hold BSRR liable. Nonetheless, Plaintiff's suggestion at the April 12, 2006 hearing that the court's summary judgment opinion ignored certain disputed facts and improvidently made credibility findings cannot go unaddressed.

Plaintiff contends that the court's reliance on certain facts taken from FSC and BSRR representative affidavits was improper because those facts were disputed by testimony from Robert Henry Wilson, Jr., Tube City's representative (regarding payments from Tube City to BSRR) and Plaintiff's affidavit (regarding work performed by FSC employees for BSRR).  Plaintiff's argument comes as a great surprise to the court given that the facts which Plaintiff now claims are disputed are the very facts that *Plaintiff admitted* were undisputed in his response to Defendants' brief.  (Docs. # 37, 50, at Fact Nos. 11, 12, 13, 14, 48, 49, 50, 53, 54, 55, 56, 64, 65, 66).  The law is clear that once the summary judgment movant satisfies its burden to show that no genuine issues of material fact exist, the nonmoving party must "*designate facts* that show there is a genuine issue for trial." *Velten v. Regis B. Lippert, Intercat, Inc*., 985 F.2d 1515, (11th Cir. 1993)(emphasis added) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  Plaintiff not only failed to meet this burden, but he admitted that the facts at issue were undisputed.

Furthermore, and in any event, the court's summary judgment opinion viewed the evidence in the light most favorable to the non-movant, including the testimony from Wilson regarding payments from Tube City to BSRR and Plaintiff's affidavit testimony regarding work he performed for BSRR.  Neither piece of evidence changes the fact that Defendants are entitled to summary judgment.  First, Plaintiff miscomprehends Wilson's testimony.  Plaintiff argues that the court ignored Wilson's testimony that Tube City pays a monthly bill to BSRR, which Plaintiff believes disputes Gentile's testimony that FSC has a separate contract with Tube City who pays FSC directly for its services.  In fact, although Wilson did speak of payments from Tube City to both BSRR and FSC, he made clear that "there is a monthly bill from both [BSRR and FSC] because there is a difference in what the bills are for."  (Doc. # 44, Ex. A, at 29).  Wilson's testimony outlines the differences in the work performed by each entity, noting that "we will get a bill from the Birmingham Southern for the switch to get it from Ensley [outside of the Fairfield Works facility] to our yard [within Fairfield Works]," (Doc. # 44, Ex. A, at 29), and then FSC will bill Tube City for transporting the material within the confines of Fairfield Works. (Doc. # 44, Ex. A, at 29-30, 38-39).  Wilson's explanation of the different services performed by each entity, for which Tube City is billed separately, does not dispute Gentile's testimony that Tube City pays FSC directly for its services.  Plaintiff's imbroglio does not a disputed fact make.

Moreover, the court also took into account as part of its "alter ego" analysis Plaintiff's affidavit testimony that, as an employee of FSC, he sometimes switched cars for BSRR at "certain tracks in the tin mill area." (Doc. # 44, Ex. B, at 2). Plaintiff apparently claims that his performance of certain tasks for BSRR suggests that he was a BSRR employee or that BSRR "so controls the operation of [FSC] as to make it a mere adjunct, instrumentality, or alter ego of [BSRR]." *Duff v.*

letter carries the weight that Plaintiff asserts.[2]

Defendants maintain that the FRA letter does not justify setting aside the court's prior judgment because given that the FRA's jurisdiction is broader than FELA "common carrier" jurisdiction, the FRA letter does not alter the fact that FSC is a "contract" or "private" carrier not

---

*Southern Ry. Co.*, 496 So.2d 760, 762 (Ala. 1986). To the contrary, Plaintiff's testimony was insufficient alone to establish control when considered as one of eleven factors which, on balance, indicated that FSC and BSRR do constitute separate and distinct corporate entities. The court noted that "Plaintiff has offered only paltry evidence of control which is insufficient to establish that FSC is the alter ego of BSRR . . . [even though] Plaintiff can point to several factors supporting the test for determining alter ego status." (Doc. # 61, at 17-18). The court viewed the evidence in the light most favorable to Plaintiff but, unfortunately for Plaintiff, that evidence was not sufficient to withstand summary judgment.

[2] Plaintiff's assertion that "this newly discovered evidence will certainly change the outcome of this case because this Court has held that the absence of [FRA jurisdiction] is the exact reason why summary judgment was entered" misconstrues the court's reliance on the FRA's determination. (Doc. # 68, at 6). As outlined *infra*, the court's summary judgment opinion did not hinge on the absence of federal authority over FSC. In fact, the court only noted it as an afterthought to its analysis of the *Lone Star* factors and other relevant case law. The court made clear that the absence of any exercise of federal authority over FSC was persuasive only – not dispositive. (Doc. # 61, at 12). Moreover, as the court explains *infra*, while the *absence* of FRA jurisdiction may be persuasive evidence that a railroad is not subject to FELA, the *presence* of FRA jurisdiction does not mean that FELA must apply.

Ironically, Plaintiff's opposition to Defendants' motion for summary judgment, filed before the FRA decided to exercise jurisdiction over FSC, belittled the Defendants' reliance on the fact that no federal agency had exerted authority over FSC:

> The Defendants are barking up the wrong tree with the argument that Federal Railroad Authorities do no consider Fairfield Southern to be a common carrier by rail. The only criteria as to weather [sic] a railroad falls under FELA is weather that railroad is a common carrier . . . . There is nothing in the FELA statue that states that the railroad must fall under the Federal Railroad Administration (FRA) authority or that the railroad's employees are subject to the United States Railroad Retirement Board (RRB). The only criteria is that the railroad be a common carrier by rail engaged in interstate commerce.

(Doc. # 50, at 8).

3

subject to FELA. For the reasons outlined below, the court agrees with Defendants and finds that Plaintiff's motion is due to be denied.

## I. Procedural History

On September 25, 2002, Plaintiff filed suit under the Federal Employer's Liability Act, 45 U.S.C. § 51, *et. seq.*, ("FELA") against his employer, Fairfield Southern Company, Inc. ("FSC"), and the parent company of FSC, Birmingham Southern Railroad Company ("BSRR"), a common carrier by railroad engaged in interstate commerce, for injuries that he allegedly incurred at work. (Doc. # 1).

On April 30, 2003, both parties filed motions for summary judgment pursuant to Fed. R. Civ. P. 56. (Docs. # 12, 13). On August 17, 2004, Plaintiff filed a Rule 56(f) motion to reopen discovery because Plaintiff learned that the Federal Railroad Administration ("FRA") was investigating whether FSC was within FRA's jurisdiction. (Doc. # 30). The court not only reopened discovery at Plaintiff's request, but thereafter twice extended the time for reopened discovery because the FRA's ruling on the FSC matter was delayed longer than expected. (Docs. # 32, 33, 34, 35). By March 17, 2005, when the FRA had still not ruled on the FSC matter, the court took the motions for summary judgment under submission with the evidentiary material available as of that date.[3]

Defendants' summary judgment motion sought judgment as a matter of law on the bases that FSC is an in-plant railroad not subject to FELA; FSC is not the alter ego of BSRR; and in any event, Plaintiff is judicially estopped from pursuing any claims under FELA because he already had accepted full medical benefits under the Alabama Worker's Compensation Act plus indemnity payments for

---

[3] Given the passage of time since the filing of the parties' initial summary judgment motions, the court permitted the parties to refile their summary judgment motions and submit any additional evidence gleaned through additional discovery. (Docs. # 36, 41).

his alleged injuries. (Doc. # 36). Plaintiff's motion countered that FSC is subject to FELA because it, like BSRR, is a common carrier by rail engaged in interstate commerce. (Doc. # 41). Plaintiff also claimed that his suit against BSRR is appropriate because FSC is "its alter ego and a mere instrumentality." (Docs. # 1, 41).

By memorandum opinion and order dated July 25, 2005, the court granted summary judgment in favor of FSC, finding that FSC is not a common carrier by rail in interstate commerce and thus not subject to FELA, and in favor of BSRR, finding that FSC is not the alter ego of BSRR.[4] (Docs. # 61, 62). On August 3, 2005, Plaintiff filed his notice of appeal to the Eleventh Circuit. (Doc. # 63).

## II. Legal Standards for Evaluating a Rule 60(b)(2) Motion

Rule 60(b)(2) provides that "upon such terms as are just, the court may relieve a party from a final judgment . . . for . . . newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under 59(b)." Fed. R. Civ. P. 60(b)(2). Relief pursuant to Rule 60(b)(2) is appropriate only if the moving party offers newly discovered evidence that could alter the outcome of the trial. *Morris Communications Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1298 (11th Cir. 2004). Movants under Rule 60(b)(2) must meet a five-part test: (1) the evidence must be newly discovered since the judgment; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result. *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1316 (11th Cir. 2000).

"A motion for a new trial under Rule 60(b)(2) is an extraordinary motion and the requirements of the rule must be strictly met." *Toole*, 235 F.3d at 1316. As the Eleventh Circuit has made clear, "[f]inality is a virtue in the law." *Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1309

---

[4] The court did not reach Defendants' judicial estoppel argument.

(11th Cir. 2003) (citing S.S. Peloubet, A Collection of Legal Maxims in Law and Equity 77 (1985) ("Expedit reipublicae ut sit finus litium: It is for the public good that there be an end of litigation.")). The district court's consideration of a Rule 60(b) motion is reviewed for abuse of discretion. *American Bankers Ins. Co. of Fla. v. Northwestern Nat'l Ins. Co.*, 198 F.3d 1332, 1338 (11th Cir.1999).

Although Plaintiff's appeal currently is pending in the Eleventh Circuit,[5] this court still retains jurisdiction to entertain a Rule 60(b) motion. As a general matter, the filing of a notice of appeal deprives the district court of jurisdiction over all issues involved in the appeal. *Doe v. Bush*, 261 F.3d 1037, 1064 (11th Cir. 2001). However, it does not prevent the district court from taking action "in furtherance of the appeal" *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928, 930 (5th Cir.1976),[6] nor does it prevent the court from entertaining motions on matters collateral to those at issue on appeal. *Doe*, 261 F.3d at 1064.

Accordingly, the Eleventh Circuit has held that district courts retain jurisdiction after the filing of a notice of appeal to entertain and deny a Rule 60(b) motion. *Mahone v. Ray*, 326 F.3d 1176, 1179-1180 (11th Cir. 2003). However, following the filing of a notice of appeal, district courts do not possess jurisdiction to grant a Rule 60(b) motion. *Mahone*, 326 F.3d at 1179-1180. A district court presented with a Rule 60(b) motion after a notice of appeal has been filed should assess the merits of the motion and then must either deny the motion or indicate its belief that the arguments raised are meritorious. *Id.* "If the district court selects the latter course, the movant may then petition

---

[5] The court has been informed that the Eleventh Circuit has stayed the appeal pending this court's consideration of the Rule 60 motion.

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

the court of appeals to remand the matter so as to confer jurisdiction on the district court to grant the motion." *Id.*

### III.     Applicable Substantive Law and Discussion

Under FELA, a plaintiff may bring suit against his employer if that employer is a "common carrier by railroad" while engaging in commerce between any of the several states or territories. 45 U.S.C. § 51.[7]  The term "common carrier by railroad" has been defined to mean "one who operates a railroad as a means of carrying for the public,--that is to say, a railroad company acting as a common carrier." *Edwards v. Pacific Fruit Express Co.*, 390 U.S. 538, 540 (1968).  Other courts have recognized that a common carrier meets the following criteria:

> One who holds himself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering his services to the public generally.  The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently, and hence is regarded in some respects as a public servant.

*Kieronski v. Wyandotte Terminal Railroad Co.*, 806 F.2d 107, 108 (6th Cir. 1986) (citations omitted). This Circuit has enumerated four factors to be considered in the "common carrier" analysis: (1) the entity is actually performing rail service; (2) the service being performed is part of the total rail service contracted for by a member of the public; (3) the entity is performing as part of a system of interstate rail transportation by virtue of common ownership between itself and a railroad or by a contractual relationship with a railroad and hence such entity is deemed to be holding itself out to the public; and (4) remuneration for the services performed is received in some manner, such as a fixed charge from a railroad or by a percent of the profits from a railroad.  *Lone Star Steel Co. v. McGee*, 380 F.2d 640, 647 (5th Cir. 1967).

---

[7] It is the plaintiff's burden to show that the defendant is a common carrier, and plaintiff "therefore must present affirmative evidence indicating such."  *Mickler v. Ninishillen and Tuscarawas R.R. Co.*, 13 F.3d 184, 189 n. 3 (6th Cir. 1993).

Importantly, the FRA's statutory jurisdiction is broader than the "common carrier by railroad" jurisdiction of FELA.  Thus, while all "common carrier" railroads are regulated by the FRA and subject to FELA, not all railroads regulated by the FRA are "common carrier" railroads.[8] *Mickler v. Nimishillen and Tuscarawas Ry. Co.*, 13 F.3d 184, 187-188 (6th Cir. 1993) ("By the Act of 1988, Congress broadened federal jurisdiction over railroad safety to include railroads that are neither common carriers nor engaged in interstate commerce . . . .These amendments, however, were limited to the statutory provisions outlining safety standards and the procedures by which the FRA would enforce these standards.  Congress did not amend FELA, which creates a tort remedy for railroad employees injured as a result of the negligence of their employers.")  Although the FRA has the power to exert jurisdiction over all railroads, it traditionally has excluded from its jurisdiction plant railroads "that serve just the plant itself."  (Doc. # 69, Ex. 1, at 2). "[O]nce a plant railroad is serving more than itself or one customer, then FRA usually exercises jurisdiction."  (Doc. # 69, Ex. 1, at 2). In accordance with that tradition, the FRA exerts jurisdiction over private carrier railroads and

---

[8] The regulations provide:

> Prior to 1988, the older safety statutes had applied only to common carriers engaged in interstate or foreign commerce by rail.  The Safety Act, by contrast, was intended to reach as far as the Commerce Clause of the Constitution (i.e., to all railroads that affect interstate commerce) rather than be limited to common carriers actually engaged in interstate commerce.  In reporting out the bill that became the 1970 Safety Act, the House Committee on Interstate and Foreign Commerce stated:
>
> The Secretary's authority to regulate extends to all areas of railroad safety.  This legislation is intended to encompass all those means of rail transportation as are commonly included in the term. Thus, 'railroad' is not limited to the confines of 'common carrier by railroad' as that language is defined in the Interstate Commerce Act.

49 CFR 209, Appendix A.

contract carrier railroads, neither of which would be subject to the "common carrier" jurisdiction of FELA.

In its summary judgment papers, FSC maintained that it is not a common carrier because it does not hold itself out to the public as providing rail service for hire. (Doc. # 36 (relying on Gentile Affidavit)). This court agreed, finding that FSC does not satisfy the requirements of a common carrier as outlined in *Lone Star*, but instead meets the classic definition of a *private* carrier who hauls for clients "pursuant to individual contracts, entered into separately with each customer" and is not subject to FELA. (Doc. # 61, at 11-12 (quoting *Kieronski v. Wyandotte Terminal R. Co.,* 806 F.2d 107, 109 (6th Cir. 1986)). The FRA letter does not change the facts noted by the court in support of its finding that FSC tends to meet the definition of a private carrier,[9] including the following: (1) although FSC does perform rail service for Fairfield Works' in-plant scrap recyclers, Tube City[10] and Fritz Enterprises ("Fritz"),[11] FSC – not BSRR – maintains the contracts with those facilities, (Gentile Affidavit); (2) Tube City and Fritz are located entirely on U. S. Steel property (Wilson Depo., at 17-18, 35; Sitz Depo., at 34, 38-39), and FSC's rail service for those companies is performed only within the boundaries of Fairfield Works (Wilson Depo., at 38, Ex. B); (3) Tube City and Fritz pay FSC directly (Kashurba Depo., at 13, 15-16), and they are not charged a fee by BSRR which includes a portion for that service, (Doc. # 61, at 11-12); and (4) FSC receives no rate divisions from any

---

[9] The FRA letter allowed 90 days for FSC to "bring its operations into compliance with Federal regulations." (Doc. # 68, Ex. 1, at 4). Interestingly, evidence submitted by Plaintiff in support of his motion indicates that because FSC desires to maintain its historic status as a "plant railroad," it intends to "transfer responsibility for the three movements [described in the FRA letter (PinnOak, Tube City, and Fritz)] to BSRR" within the 90-day period. (Doc. # 72, Ex. F, at 2). FSC believes "that the proposed changes will enable the Fairfield Southern to maintain its historic status as a plant railroad" presumably not subject to FRA control. (Doc. # 72, Ex. F, at 2).

[10] Tube City's primary service at the mill is to take in scrap material, process it, bundle it and return it to the plant for steel making. (Wilson Depo., at 36, Ex. B).

[11] Fritz contracts with U. S. Steel to service the blast furnaces. (Sitz Depo., at 35, Ex. D).

9

common carrier railroad and collects no rate divisions from any common carrier railroad. (Gentile Affidavit). All of these facts suggest that FSC is more properly classified as a private carrier, not a common carrier under *Lone Star*, and none of these facts are assailed or otherwise called into question by the FRA's determination, especially given that the FRA *does exert* jurisdiction over private carriers who are not subject to FELA.

Defendants also maintain that the FRA letter is not properly characterized as "newly discovered evidence" because it admittedly was based on "recent changes" at FSC which were not in existence at the time of Plaintiff's injury in 2001. (*See* Doc. # 69, Ex. 1, at 2 ("However, in light of the information regarding recent changes at Fairfield Works, it is clear that FS's operations do not fit the exclusion for a plant railroad."). The FRA's recent decision to exert jurisdiction over FSC was based, at least in part, on FSC's "service to and from PinnOak Resources, LCC . . . [which] was in fact formerly owned by US Steel Mining Company ('USSMC'), a wholly owned subsidiary of USS, [but sold] in June 2003 . . . to PinnOak, a new business unaffiliated with USS, FS, or BSRR." (Doc. # 69, Ex. 1, at 3). Thus, Plaintiff's "new evidence" is based, at least in part, on facts which were not in existence at the time of the alleged accident, and which cannot serve as the basis for imposing FELA jurisdiction over Plaintiff's claim which arose at the time of his injury in August 2001.

As the court's summary judgment opinion noted – almost as an afterthought to its analysis of the relevant case law and statutory authority – evidence that, as of the date of entry of the court's summary judgment order, no federal authority had contended that FSC is, or considered FSC to be, a common carrier railroad subject to federal common carrier regulations was *persuasive*, but not dispositive.[12] Nonetheless, while the absence of FRA jurisdiction over FSC is persuasive evidence

---

[12] In addition to the FRA, which had previously indicated that it did not consider FSC to be within its jurisdiction (*see* Willard Depo., at 64 - 65), the Railroad Retirement Board has concluded (and presumably continues to conclude) that FSC "is not an employer under the Railroad Retirement and Railroad Unemployment Insurance Acts." (Gentile Affidavit, Ex. Opinion No. L-85-120

that FSC is not subject to FELA, the reverse is not true. The FRA's decision to now exert jurisdiction over FSC is of no moment to the FELA analysis given that the FRA's jurisdiction is much broader than the bounds of FELA and further given that the facts relied upon by FRA are not sufficient to trigger FELA coverage.

**IV.    Conclusion**

Accordingly, the court finds that even if the FRA letter is properly characterized as "newly discovered evidence," it does not alter the outcome of the court's July 25, 2005 order granting summary judgment in favor of Defendants. Plaintiff's Rule 60(b)(2) motion is due to be denied. A separate order will be entered.

**DONE** and **ORDERED** this ____17th____ day of April, 2006.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

(1985)).